UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| JOSHUA B. TURNER, <br> # 551-643 <br><br> Plaintiff, <br><br> WILLIAM E. SMITH <br> # 651-930 <br><br> Plaintiff, <br><br> v. <br><br> PRISONER TRANSPORT SERVICE OF AM., *et al.*, <br><br> Defendants. | No. 3:17-cv-01260 <br> CHIEF JUDGE CRENSHAW |

## MEMORANDUM OPINION

Joshua B. Turner, an inmate of the North East Arkansas Community Correction in Lake City, Arkansas, and William E. Smith, an inmate of the Chillicothe Correctional Institution in Chillicothe, Ohio, bring this pro se, in forma pauperis action under 42 U.S.C. § 1983 against "Prisoner Transport Service of Am." (PTS), "U.S. Correction Prisoner Trans. Srv.," drivers N. Carlson and f/n/u Vaughn, and four as-yet identified John and Jane Doe drivers, alleging that these Defendants violated the Plaintiffs' civil rights while transporting them from North Carolina to several other states. (Doc. No. 1).

The Plaintiffs' claims are before the Court at this time for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.      PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed in forma pauperis that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). Id. § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although pro se pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108,

110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with pro se complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.     Section 1983 Standard

The Plaintiffs bring their claims pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person acting under color of state law. Tahfs v. Proctor, 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

## III.    Alleged Facts

The complaint alleges that, in May of 2017, the Plaintiffs were extradited from North Carolina to Ohio and Arkansas. They were transported in a conversion van operated by U.S. Correction acting as an affiliate agent of PTS. According to the complaint, the Plaintiffs were subjected to unconstitutional conditions of confinement during the ten-day journey. For example, the complaint alleges that the van did not have seat belts, interior lights, an emergency exit, or a fire extinguisher; the drivers consistently drove recklessly including smoking and texting while driving at high rates of speed in excess of posted speed limits; the van drivers would not stop even when the Plaintiffs and other inmate passengers vomited and needed to clean up; the van drivers gave Gatorade jugs and trash bags to the Plaintiffs to use as urinals in the van instead of providing adequate restroom breaks; and the passenger inmates had to ride for days surrounded by vomit and urine.

The complaint further alleges that the van was involved in a near accident in or near Atlanta, Georgia, when Defendant Carlson was texting and speeding while driving through a construction zone and suddenly braked to avoid hitting another vehicle. The sudden braking caused the Plaintiffs to slam against one another and into a metal wall located at the rear compartment of the van, injuring Turner's foot and Smith's neck and left shoulder.

The Plaintiffs sought medical attention for their injuries, and Carlson "did not respond to [their] pleas for help, and when [the plaintiffs] got up from the floor, she accelerated and threw us all back towards the rear cage doors and [the plaintiffs] all got tangled up again . . . ." (Doc. No. 1 at 10). The Plaintiffs' requests for medical attention were otherwise ignored. Vaughn had to assist Turner on and off the van due to his injured foot. The Plaintiffs asked for grievance forms regarding the incident and their untreated injuries, but the drivers told the Plaintiffs: "we don't have those." (Id. at 11). On May 7, 2017, the drivers left the Plaintiffs at the Nelson County Jail for three and half hours. The Plaintiffs requested medical attention, but the jail's nurse already had left for the day, so the Plaintiffs were held in the jail's library until the van returned at 9:30 p.m.

Next, the drivers headed to a Kentucky prison where the Plaintiffs "were told not to ask for medical care there[;] you won't get any." (Id. at 13). The Plaintiffs next arrived at "the Hub," a county jail with holding pods for PTS prisoners. Upon arrival, the intake officer gave the Plaintiffs forms for requesting medical attention and grievance forms. Two days later, on May 9, 2017, a female doctor "made a visional minimum inspection" of the Plaintiffs' injuries and said she would order x-rays "if P.T.S. would pay for them." (Id. at 14). The Plaintiffs never received x-rays and, despite filing grievances regarding their need for medical attention, never received responses.

On May 10, 2017, Plaintiff Smith was later taken east by PTS bus. On May 11, 2017,

4

Plaintiff Turner was taken west. Turner advised PTS drivers "Doe and Moe" that he had a foot injury and showed them the injury. They responded: "There's nothing we can do. You'll have to wait until you get to your destination." (Id.) The Plaintiff was in pain during his four days of travel before arriving at the Stone County Jail. There, the Plaintiff was not given the medical attention he sought and his grievances were ignored. The Plaintiff later was transferred to Osceda, Arkansas, where he finally received medical attention. He foot healed in a "broken position" and doctors are determining whether the Plaintiff needs surgery on his foot. (Id. at 15).

Upon his departure from the Hub, Plaintiff Smith informed his female driver, Jane Doe, in the presence of his male driver, John Doe, that the Plaintiff had injuries to his neck and left shoulder. They told Smith he would have to wait for treatment until he was delivered to his institution. He was on the bus an additional three days before being dropped off in Ohio. Smith's requests for medical attention and his grievances have been ignored to date.

IV. Analysis

    A. **Conditions of confinement claims**

The Eighth Amendment of the United States Constitution requires prison officials to ensure the "reasonable safety" of inmates. See Farmer v. Brennan, 511 U.S. 825, 114 S. Ct. 1970, 128 L.Ed.2d 811 (1994). The Eighth Amendment "was designed to protect those convicted of crimes" and does not protect pre-trial detainees. Ingraham v. Wright, 430 U.S. 651, 664, 97 S. Ct. 1401, 51 L.Ed.2d 711 (1977). It is unclear from the present record whether either Plaintiff was a pre-trial detainee at the time of his transport. For the purposes of initial review, however, this is largely a distinction without a difference because the Due Process Clause of the Fourteenth Amendment provides pre-trial detainees with rights analogous to those under the Eighth Amendment. See

Watkins v. City of Battle Creek, 273 F.3d 682, 685 (6th Cir. 2001).

The Constitution does not protect pre-trial detainees or prisoners from unpleasant prison experiences. Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir.1987). Nor does the Constitution mandate comfortable conditions of confinement. Rhodes, 101 S.Ct. 2400. It necessarily follows, then, that a pre-trial detainee or prisoner has not been subjected to cruel and unusual punishment simply because he has been made to feel uncomfortable during the course of a transfer from one prison to another. See Waller v. Transcor Am., 2007 WL 3023827, at *6 (M.D. Tenn. Oct. 11, 2007)(citing Woods v. Edwards, 51 F.3d 577, 581 (5th Cir.1995) (a prisoner's mere discomfort, without more, does not offend the Eighth Amendment)).

However, the Plaintiffs here allege that they suffered more than mere discomfort while being transported from one location to another. They allege that officers/drivers did not take sufficient breaks en route and drove recklessly and dangerously, creating unsafe and unsanitary conditions for the drivers and occupants and resulting in specific physical injuries to the Plaintiffs following a near automobile accident and a journey of more than ten days. After notifying the defendant officers/drivers of their injuries and ailments, the Plaintiffs contend that the defendants ignored the Plaintiffs' request for hygiene breaks and medical attention. The complaint further alleges that, when the Plaintiffs finally arrived at a PTS holding facility, the Plaintiffs were denied appropriate medical treatment there because PTS refused to pay for the Plaintiffs' x-rays. Consequently, for purposes of the required PLRA screening, the Court finds that the complaint states colorable Eighth or Fourteenth Amendment claims[1] by the Plaintiffs against PTS and U.S. Correction Prisoner Trans.

---

[1] As noted above, because it is unclear from the present record whether either Plaintiff was a pre-trial detainee or convicted prisoner at the time of his transport, the Court is unable to determine at this time whether the Eighth Amendment or the Due Process Clause of the Fourteenth Amendment applies.

Srv.

B.  **Denial of medical care claims**

To establish a violation of his constitutional rights resulting from a denial of adequate medical care, a plaintiff must show that the defendants were deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Brooks v. Celeste, 39 F.3d 125, 127 (6th Cir. 1994). "Deliberate indifference" is the reckless disregard of a substantial risk of serious harm; mere negligence, or even gross negligence, will not suffice. Farmer v. Brennan, 511 U.S. 825, 835-36 (1994); Williams v. Mehra, 186 F.3d 685, 691 (6th Cir. 1999)(*en banc*); Westlake v. Lucas, 537 F.2d 857, 860-61 n.5 (6th Cir. 1976); see also Estelle, 429 U.S. at 105-06.

A claim of deliberate indifference to a prisoner's medical needs under the Eighth Amendment has both an objective and subjective component. Rouster v. Cnty. of Saginaw, 749 F.3d 437, 446 (6th Cir. 2014). A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." Id. (quoting Farmer, 511 U.S. at 834). A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id.

A prisoner's difference of opinion regarding diagnosis or treatment does not rise to the level of a Constitutional violation. Estelle, 429 U.S. at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. Westlake, 537 F.2d at 860 n.5 (6th Cir. 1976). Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue that his health suffered as a consequence of such

alleged denial. See Thaddeus-X v. Blatter, 175 F.3d 378, 401 (6th Cir. 1999).

Here, the complaint alleges that Plaintiff Turner sustained a foot injury and Plaintiff sustained a neck and shoulder injury during transport by the Defendants. For purposes of the PLRA screening, the court assumes that these injuries constitute sufficiently serious medical needs. See Rouster, 749 F.3d at 446.

As to Defendant Carlson, Vaughn, and the four as-yet identified officer/drivers' states of mind, the complaint alleges that these individuals provided no medical treatment to the Plaintiffs even though, according to the complaint, the Plaintiffs asked for medical treatment several times over many days. Vaughn certainly knew that Plaintiff Turner's foot was injured because he helped Turner in out and out the van during transport after Turner sustained the foot injury. Within this time period, Carlson and Vaughn dropped the Plaintiffs off for four hours at a county jail where no medical treatment could be provided to the Plaintiffs. Carlson and Vaughn told the Plaintiffs not to bother asking for medical care at one drop-off location and, at the PTS Hub, the Plaintiffs did not receive needed x-rays because PTS refused to pay for the x-rays. As to Defendant Carlson, the complaint alleges that she purposefully drove in such a way as to further injure the Plaintiffs when they asked her for help.

The court finds that these allegations, "if true, would show that the official[s] being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that [they]id in fact draw the inference, and that [they] then disregarded that risk." Id. Consequently, the court finds that the complaint sets forth non-frivolous Eighth Amendment claims against all Defendants under § 1983 for the failure to provide medical treatment. The claims against PTS and U.S. Correction Prisoner Trans. Srv. will proceed because it is unclear at this time whether the individual Defendants

8

acted pursuant to a policy and custom created and/or implemented by PTS and/or U.S. Correction Prisoner Trans. Srv.

Although designation of "John Doe" or "Jane Doe" defendants is not favored, it is permissible when the defendants' identities are not known at the time the complaint is filed, but may be determined through discovery. See Berndt v. Tennessee, 796 F.2d 879, 882-84 (6th Cir. 1986). The Court concludes that it would be inappropriate to dismiss the claims against the John Doe or Jane Doe Defendants at this juncture because of the likelihood that the identities of these Defendants will be determined during discovery.

### C. Failure to respond to grievances claims

To the extent that any of the Plaintiffs' § 1983 claims are premised on a Defendant's response, or lack of response, to the Plaintiffs' grievances, a Plaintiff cannot premise a § 1983 claim on allegations that the an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place. See Hewitt v. Helms, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995)); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991). Since a prisoner does not have a constitutional right to an effective or responsive grievance procedure, the Plaintiffs' claims based on any Defendant's failure to respond to the Plaintiffs' grievances do not state a claim upon which relief can be granted. All such claims will be dismissed.

## V. Conclusion

In summary, the Plaintiffs' failure to provide medical treatment claims, together with Plaintiffs' conditions of confinement claims, will be permitted to proceed against all Defendants.

However, the Plaintiffs' claims based on any Defendants' failure to respond to grievances fail to state claims upon which relief can be granted, and those claims will be dismissed.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE